27267, 27299.   HIX *v.* SOUTHERN RAILWAY COMPANY;
and *vice versa.*

Decided March 8, 1939.

*E. C. Starke, J. N. Rainey,* for plaintiff.
*Wheeler & Kenyon, Davis & Stephens, S. J. Smith,* for defendant.

STEPHENS, P. J.   J. R. Hix sued Southern Railway Company to recover damages in the sum of $12,000, on account of the loss of services of his minor son, Robert, who was born on July 18, 1918, alleging in the first count of his petition that on July 22, 1935, the defendant was operating a freight-train, commonly known as a "peach-train," on its branch line in Commerce, Georgia; that the persons employed at the peach packing-sheds and other loading places had been permitted to ride on the peach-trains with the knowledge and consent of the defendant, and that such riding had become "so notorious as to become an established custom;" that on July 22, 1935, his son, then 17 years of age, was employed to work at a peach shed about a mile and a half from the defendant's depot at Commerce, Georgia; that his son was at the defendant's depot, and the peach-train was there, and about to depart for the shed where his son worked, and his son asked one of the trainmen in charge of the train, named Bryant, if he could ride on the train to his place of work, and Bryant answered that he could ride on the train, and directed Robert to get up between two peach cars, and in such place he could ride to the peach shed; that Robert followed these directions, and got up between the two

cars to ride from the depot to the peach shed; that the place where Bryant directed Robert to ride was a place of extreme danger, though it did not so appear to Robert on account of his tender age and experience, he never before having been upon a train of any kind, and a train of any kind was an attraction to him; that after the son was placed on the train and was in a place of extreme danger, the defendant, through its agents and servants operating the train, was put upon notice of the presence thereon of the said minor, had actual notice thereof, and owed him the duty to handle its train in such manner as not to jeopardize the life, limb, or body of said minor, and to operate the train with ordinary care and caution; that due to the negligent manner in which the defendant handled the train, Robert was caused to be thrown from his place between the cars where he had been directed to ride, and his right foot and ankle were caught between the bumpers or other parts of the cars and were crushed and seriously injured; that the defendant was negligent in that its servants and agents operated the train in an unreasonably fast and rough manner, and applied the brakes so suddenly and in such rough manner as to cause the cars to buckle, surge, and tend to telescope or run upon one another, all with a disregard and lack of ordinary care for the safety of the minor; that it did not exercise ordinary care in controlling the movements of the train so as to avoid injury to Robert, his presence being known and in a place of danger, and in not notifying the minor that his place was one of danger; that the minor sustained injuries which necessitated the amputation of his right leg, and caused a loss of earning capacity.

The second count of the petition was identical in its allegations with the first count except that the defendant was charged in the latter with a wilful and wanton handling of the train, and that such wilful and wanton conduct was the sole proximate cause of the injury to the minor.

The defendant demurred generally to the petition as setting forth no cause of action, and failing to show that the court had jurisdiction, and demurred specially to various paragraphs of both counts of the petition. The court overruled the general demurrer and certain of the special demurrers, and sustained certain grounds of special demurrers unless the plaintiff amended to meet these grounds within twenty days from the date of the order. This

order was dated December 3, 1937. On December 22, 1937, the plaintiff presented an amendment which was allowed subject to demurrer. The defendant then renewed its original demurrers, on each ground, to the petition as amended, and added other grounds of demurrer to both counts as amended. On these demurrers the court held that the amendment failed to sufficiently meet the grounds of demurrer to count 1, and sustained the demurrers to count 1 as amended. As to count 2, the court ruled that the amendment sufficiently met the demurrers to count 2, and the demurrers to count 2 were overruled. The plaintiff filed exceptions pendente lite to the order of the court sustaining the demurrer to count 1 of the petition. The case went to trial on count 2, and on the conclusion of the plaintiff's evidence, the defendant moved for a nonsuit which was granted by the court. The plaintiff filed a bill of exceptions in which error is assigned on the order of the court sustaining the demurrers to count 1 of the petition, and on the order granting a nonsuit. The defendant filed a cross-bill of exceptions to the order overruling the demurrers to count 2.

■ The plaintiff did not file any exceptions to the order of the court of December 3, 1937, sustaining these grounds of the defendant's demurrer unless amended within twenty days, and therefore he is bound by that decision to the extent that his amendment did not cure the defect pointed out by the demurrer. The third ground of the defendant's original demurrer was to paragraph 6 of count 1, which, in substance, alleged that persons employed at the packing-sheds and other loading places had been permitted to ride on the peach-trains with the knowledge of the defendant, "and said riding upon said peach-trains and engine and cars so making up and shunting said peach cars has been so notorious as to become an established custom." Among other objections to this paragraph the defendant demurred because it was not shown whether the alleged established custom for people to ride on the defendant's trains was for them to ride in the cars or between the cars, and it was not shown where and on what part of the defendant's trains various persons were permitted to ride in such manner as to establish a custom. In his amendment the plaintiff did amend paragraph 6 of count 1 so as to meet a part of the defendant's third ground of special demurrer, but did not amend to meet sub-paragraphs a, b, and c of the demurrer to paragraph 6, which had been

sustained by the court in the order of December 3. Consequently, the finding by the court that the amendment failed to sufficiently meet the grounds of demurrer urged to count 1 was correct, and at least the effect of this was that paragraph 6 of count 1 was stricken. *Pasco Flour Mills Co.* v. *City Supply Co.*, 23 *Ga. App.* 95 (97 S. E. 558); *Scott* v. *Wells*, 23 *Ga. App.* 720 (99 S. E. 315). There then being no allegation as to the custom by which certain persons were allowed to ride on the freight-train, count 1 of the petition showed the plaintiff as a mere trespasser and therefore it set out no cause of action, the only negligence alleged against the defendant being want of ordinary care. The court did not err in dismissing count 1 of the petition.

■ There was no evidence which would authorize a jury to find that the injuries to the plaintiff were due to wilful and wanton conduct by the defendant, as alleged in count 2 of the petition. No witnesses testified as to any unusual or reckless movement by the train. The plaintiff's son testified that he came up to the train and asked a brakeman if he could ride to his place of work, and that the brakeman told him to get up between two box cars and hold on; that there was just the coupling, just a piece of iron to stand on between the heads of the two box cars coupled together; that after the train started it "would run fast awhile and then slow up and kind of surge back and to, and the cars begin to rock," and when they started to stop, his foot was on one of these pieces of iron and slipped down and was mashed; that the "train was running irregular, it would run fast awhile and slap on the the brakes and it would cause it to jump, and it seemed to rock or something of that sort, and one time when they done that it caused my foot to slip in there when the cars was jumping;" that the train "was being handled rough, the cars was bumping together and the cars was shaking and rocking very irregular," that when his foot slipped down between the drawheads the back of the train pushed forward towards the front, because the train was slowed up, and that before the time he was injured he had never been on a train, either passenger or otherwise, and never knew anything about the slack in a train until after he was hurt, and had never observed about cars surging and bucking. From this testimony it is plain that the plaintiff's son did not undertake to say wherein the movements of the train which injured him were unusual or improper, or could have been

avoided by ordinary care. In fact he was not qualified to speak on these points, he having no knowledge as to how trains should or could be operated. In addition to this, the plaintiff's son was an intelligent boy 17 years old, without experience in riding on trains, and apparently did not exercise ordinary care for his own safety. The evidence was insufficient to authorize a recovery under this count of the petition. The court did not err in granting a nonsuit.

It is not necessary to rule upon the cross-bill of exceptions.

*Judgment affirmed on the main bill, cross-bill dismissed. Sutton and Felton, JJ., concur.*